UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEITH PRIOLEAU | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3-97-cv-1216 (JCH) |
| | : | |
| SIKORSKY AIRCRAFT CORP. | : | MAY 25, 2006 |
| Defendant | : | |

**RULING  RE: DEFENDANT'S VERIFIED BILL OF COSTS [DOC. NO. 186]**

Pending before this court is defendant's Verified Bill of Costs (Doc. No. 186) and the plaintiff's "Opposition Motion to Costs (Doc. No. 188).  This matter comes before this court following a Mandate issued by the U.S. Court of Appeals for the Second Circuit (Doc. No. 182).  The Circuit reversed in part the District Court (Goettel, J.) in its entry of a Bill of Costs against the plaintiff, Keith Prioleau, in the amount of $16,525.13 for deposition costs, and the award of $1,619.98 in subsistence (lodging and meals), and transportation fees for an expert witness called by Sikorsky at Prioleau's trial.  Summary Order (Doc. No. 182).[1]  Following the issuance of the Mandate by the Circuit, this court issued an Order scheduling the time for the defendant's filing of its renewed Bill of Costs for December 22, 2005.  On that day, Sikorsky's Verified Bill of Costs was docketed.  Prioleau's Opposition was received subsequently on January 12, 2006.

This case was originally filed in June 1997 by seven individuals on behalf of themselves and 174 other salaried, African-American employees of the defendant, Sikorsky Aircraft ("Sikorsky").  In their Complaint, the plaintiffs alleged racial discrimination in compensation and promotions, and challenged certain employment programs implemented by Sikorsky.  After the filing of an Amended Complaint, there

---

[1]  The Circuit affirmed the award of a U.S. Marshal's fee of $109.

were claims pending under Section 1981 of the Civil Rights Act of 1871, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), et seq.  After many months of discovery, the court denied the plaintiffs' request for class certification.  Memo. of Decision (Doc. No. 104).  Subsequently, after reaching a settlement with Sikorsky, all the named plaintiffs, except Keith Prioleau, dismissed their claims with prejudice.

Subsequent to that settlement, Sikorsky moved for summary judgment on Prioleau's claims.  (Doc. No. 122).  The court granted that motion in part as to Prioleau's hostile work environment claim and his Title VII claim for discriminatory hiring.  Ruling (Doc. No. 134).  Prioleau's remaining claims proceeded to trial.

The case was tried before this court (Goettel, Jr.) commencing on September 11, 2003, and continuing on September 12, 16, 17, 18 and 19.  On September 19, a verdict was returned in favor of Sikorsky.  In light of that, Sikorsky is the prevailing party and entitled to its costs.  See Fed.R.Civ.P. 54(d)(1); Whitfield v. Scully, 241 F.3d 264, 270 (2d Cir. 2001) ("[B]ecause Rule 54(d) allows costs "as of course," such an award against the losing party is the normal rule obtaining in civil litigation, not an exception.").

In its renewed Bill of Costs, Sikorsky has withdrawn its request for the award of witness fees.  Sikorsky continues to seek the award of a service fee of $109, which award was affirmed by the Circuit, as well as costs associated with court reporter fees and transcript costs for depositions taken in this case.

The Second Circuit reversed the previous award of $16,525.13 for deposition costs and remanded for reconsideration by this court.  In its Summary Order, the Court of Appeals noted that the district court had made no finding on the question of whether

the depositions that were the subject of Sikorsky's Bill of Costs were undertaken in connection with Prioleau's case.  Further, the Second Circuit raised the issue of why Prioleau should be charged more then his pro rata share of such costs.  See Summary Order (Doc. No. 182) at 2 (citing In Re: Air Crash Disaster, 687 F.2d 626, 630 (2d Cir. 1982)).

Marshal's Fees

Sikorsky was awarded $109 in costs for the service of witness fees, as permitted under Local Rule 54(c)(1).  End. Order (Doc. No. 169).  That Order was appealed by Prioleau and is the subject of the Summary Order of the Second Circuit described above.  The Circuit's Summary Order affirmed in part the judgment of the court below. Its reversal was clearly directed toward the award of the deposition costs and the subsistence costs.  Thus, the court reads the Second Circuit Summary Order to affirm the previous award of $109 for witness fees.


Court Reporter Fees and Transcripts

Sikorsky's Bill of Costs seeks the award of costs for certain deposition expenses in connection with the depositions of 11 persons.  Sikorsky now seeks in its Bill of Costs $2,360.73 for these costs, which amount represents one seventh of the total of such costs that Sikorsky claims are recoverable.  Sikorsky has obviously responded to the Summary Order of the Second Circuit with regard to its suggestion that a pro rata share was appropriate.  Thus, the issues remaining from the remand are whether these depositions were related to the case of Prioleau against Sikorsky, and then whether all of the costs sought by Sikorsky are recoverable.

- 3 -

Having not been the judge assigned to this matter until its remand from the Circuit, the undersigned has undertaken to review the docket and numerous pleadings in order to be able to make findings concerning the depositions which are the subject of Sikorsky's Bill of Costs.  All of the depositions in question were taken before the filing of the Motion for Class Certification.  At that time, Prioleau was one of seven named plaintiffs.  While the depositions in question were taken at the time when Prioleau was one of seven plaintiffs, Sikorsky now seeks from Prioleau only one seventh of the costs.

Further, it is clear that the depositions of all of the eleven people listed by Sikorsky were not merely related to the issue of class certification, but also were relevant to the merits of the plaintiffs' claims, including those of Prioleau.  This court's review of the record revealed that nine of the eleven persons testified at trial:  on September 11, 2003, Prioleau, Alexander, Johnson, Lawal, Dr. Madden, Beverly Robinson and Kevin Sanders testified and; on September 16, 2003, Clarence Chesney, Dr. Madden and Joan Haworth testified.  <u>See</u> Exhibit and Witness Lists (Doc. Nos. 161 and 162).  All except Joan Haworth were called by the plaintiff.[2]  Because these nine people testified, the deposition transcripts were "necessarily obtained for the preparation of the case and not for the convenience of counsel," the standard for recovery under the Local Rules.  Local Rule 54(c)(2)(ii) (D.Conn).  The remaining two deponents, Pamela O'Neill and Steven Robertson, did not testify at trial.  However, their

---

[2]  The minute entries of the court do not reflect whether Clarence Chesney testified on September 16, 2003 on behalf of the plaintiff or the defendant.  However, Mr. Chesney was listed as a witness by Prioleau in the Joint Trial Memorandum (Doc. No. 141 at 12) and in the notes of the ECRO as a witness for Prioleau.

depositions were listed by Prioleau as exhibits in the Joint Pretrial Memorandum.[3]  <u>See</u>
Joint Trial Memorandum, Doc. No. 141 at ¶ 40, p. 22, and ¶146, p. 35.  Because they
were listed as proposed exhibits by Prioleau, the court finds that the deposition
transcripts of Steven Robertson and Pamela O'Neill were "necessarily obtained for the
preparation of the case" by Sikorsky.  Local Rule 54(c)(2)(ii) (D.Conn).  Therefore, the
court finds that all the deposition transcript and related reporter fees that Sikorsky
claims are allowable as costs in this case.

However, the total sum of court reporter expenses, of which a pro rata portion is
now being sought, must be reviewed to determine if all of the costs sought as to each
deposition are allowable under the Local Rules.

First, the court notes that Sikorsky has submitted sufficiently detailed invoices
from stenographers to determine what costs are recoverable, with the exception of the
deposition of Janice Madden.  In the case of Dr. Madden, Sikorsky submitted a
"disbursement card," but has not submitted an itemized stenographer's bill.  This
disbursement card merely lists a total sum of "Bill Amt."  Because this documentation is
insufficient to prove the deposition expense, and in particular that the proper amount
has been claimed, at an allowable page rate, the court disallows the costs sought with
respect to Dr. Madden.  With respect to the expense of the other ten depositions, the
court has reviewed the invoices submitted and concludes that some items sought by

---

[3]  In addition, the deposition transcripts of both of these witnesses were used by
Prioleau in connection with its opposition to the summary judgment motion of the defendant.
<u>See</u> Affidavit of Keith Prioleau (Doc. No. 26) at Exhibit T (Pamela O'Neill's deposition) and
Exhibit U (Steven Robertson's deposition), filed in support of Prioleau's Opposition to
defendant's Summary Judgment (Doc. No. 126).

Sikorsky are not recoverable costs under the Local Rules.  The Local Rules provide that "the cost of an original and one copy of deposition transcripts are recoverable as costs, . . . if they are necessarily obtained for the preparation of the case, and not for the convenience of counsel."  Local Rule 54(c)(2)(ii) (D.Conn.)  The defendant has sought, in addition to the deposition page costs and the attendance of the reporters and sales tax, which are appropriately recoverable, "jurat preparation" ASCII discs, mini transcripts and Federal Express expense, which are not.  These expenses are "for the convenience of counsel" and not recoverable under the Local Rules.

Accordingly, the court finds that the gross recoverable costs are as follows:

Keith Prioleau (11/19/98, 11/20/98)

|  | |
|---|---|
| Transcript | $1,197.20 |
| Attendance | $   130.00 |
| Sales Tax | $     79.62 |
| Total | $1,406.82 |

Louis Alexander (12/1/98)

|  | |
|---|---|
| Transcript | $740.95 |
| Attendance | $  65.00 |
| Sales Tax | $  48.36 |
| Total | $854.31 |

Louis Alexander (12/14/98)

|  | |
|---|---|
| Transcript | $390.55 |
| Attendance | $  65.00 |
| Sales Tax | $   27.33 |
| Total | $482.88 |

Clarence Chesney (11/24/98)

|  | |
|---|---|
| Transcript | $839.50 |
| Attendance | $  65.00 |
| Sales Tax | $   54.27 |
| Total | $958.77 |

Melva Johnson (10/20/98)

|  | | |
|---|---|---|
| | Transcript | $751.90 |
| | Attendance | $ 65.00 |
| | Sales Tax | $ 49.01 |
| Total | | $865.91 |

Melva Johnson (11/13/98)

|  | | |
|---|---|---|
| | Transcript | $788.40 |
| | Attendance | $ 65.00 |
| | Sales Tax | $ 51.20 |
| Total | | $904.60 |

Babatunde Lawal (2/12/99)

|  | | |
|---|---|---|
| | Transcript | $595.20 |
| | Attendance | $ 65.00 |
| | Sales Tax | $ 39.61 |
| Total | | $699.81 |

Pamela O'Neill (1/26/99)

|  | | |
|---|---|---|
| | Transcript | $486.00 |
| | Exhibits/Inserts | $ 83.75 |
| Total | | $569.75 |

Pamela O'Neill (1/27/99)

|  | | |
|---|---|---|
| | Transcript | $198.00 |
| | Exhibits/Inserts | $139.50 |
| Total | | $337.50 |

Beverly Robinson (1/19/99)

|  | | |
|---|---|---|
| | Transcript | $821.25 |
| | Attendance | $ 65.00 |
| | Sales Tax | $ 53.18 |
| Total | | $939.43 |

Beverly Robinson (1/20/99)

|  | | |
|---|---|---|
| | Transcript | $810.30 |
| | Attendance | $ 65.00 |
| | Sales Tax | $ 52.52 |
| Total | | $927.82 |

Steven Robertson (9/24/98)

|  | | |
|---|---|---|
| | Transcript | $1,593.75[4] |
| | Attendance | $ 130.00 |
| | Sales Tax | $ 103.43 |
| Total | | $1,827.18 |

Kevin Sanders (10/6/98, 10/7/98)

|  | | |
|---|---|---|
| | Transcript | $1,244.65 |
| | Attendance | $ 130.00 |
| | Photo copies | $ 23.60 |
| | Sales Tax | $ 83.89 |
| Total | | $1,482.14 |

Joan Haworth

|  | | |
|---|---|---|
| | Transcript | $843.75 |
| | Sales Tax | $ 50.62 |
| Total | | $894.37 |

These deposition expenses total in sum $13,151.29.  One-seventh of that number is $1,878.76, which sum the court awards to Sikorsky as recoverable deposition costs in this action.

Prioleau has objected to the deposition expenses sought by Sikorsky on several grounds not yet addressed.  First, he claims that, when the other plaintiffs settled with Sikorsky, they did so pursuant to an agreement in which those parties agreed that neither side would pursue costs against the other in the case.  Prioleau claims that

---

[4]  While the bill is in the amount of $1,870 for the transcript, the maximum allowable is $3.75 per page, and there were a total of 425 pages.

because of that, Sikorsky cannot now seek costs from him.

The court has reviewed the settlement agreement and the court documents that relate to it, and concludes that the agreement between the settling plaintiffs and Sikorsky was for the benefit of the signatories to that agreement, which did not include Prioleau.  As the Second Circuit suggested and the defense has now acknowledged, each plaintiff would generally bear a pro-rated share of the expenses.  Thus, to the extent Sikorsky agreed to forego costs against the settling plaintiffs, it did so as to the settling plaintiffs.  Thus, a pro-rated share of the appropriate expenses attributable to the claim of Prioleau is still recoverable from Prioleau.

Next, Prioleau claims that even a pro rata share of the total amount originally sought by Sikorsky should not be awarded against him because it is inequitable to do so.  He claims that the deposition expenses sought in Sikorsky's Bill of Costs should not include persons like Melva Johnson because Ms. Johnson, and the other former plaintiffs, agreed to settle with Sikorsky.  Prioleau argues that, as a result of the settlement and the receipt of money and "a discharge of costs" incurred by Sikorsky, "these costs don't exist any longer."  Def.'s Opp. Mot. for Costs (Doc. No. 188) at 22. However, as discussed above, the deposition of Melva Johnson, as well as the others listed in the defendant's Bill of Costs, were all necessary in connection with trial testimony.  Prioleau called Johnson, among other former plaintiffs, to testify on his behalf.  Accordingly, the court concludes that defense counsel necessarily obtained the transcripts of the former plaintiffs (and all trial witnesses) in connection with the preparation for trial, as all of the deponents whose reporter costs are sought were listed and called as a witness, or their deposition transcript was listed by Prioleau as an

- 9 -

exhibit.

Prioleau also argues that the award of any costs would be inequitable because of intervening circumstances.  While the court understands that the award of costs is discretionary, see, e.g., Whitfield v. Scully, 241 F.3d 264, 269 (2d Cir. 2001), the court finds no basis upon which to exercise its discretion in this case to deny appropriate costs to the defendant.

Prioleau describes his claim of "intervening circumstances" at length in his opposition.  In that opposition, he provides a history of his relationship with Sikorsky, Pratt & Whitney, and Computer Sciences Corp.  He lays out at length his complaint about his termination from Computer Sciences Corp., which was an out source operation for computer technology work for United Technologies Corporation, the parent to Sikorsky and Pratt & Whitney.  Prioleau describes his view that he was a victim of retaliation, and that CSC and UTC are joint employers.  Prioleau describes a claim filed with the Connecticut Commission on Human Rights and Opportunities (CCHRO) claiming wrongful termination/retaliation.  As of the time of the filing of his Opposition, Prioleau reports that the CCHRO is investigating these claims.  See Plf.'s Opp. (Doc. No. 188) at 13).

The "intervening circumstances" that Prioleau assert are that he only just became aware of a "causal link" of retaliation between the defendant in this case, Sikorsky, and the respondent in his pending CCHRO case, Computer Sciences Corp. Further, he claims that, because he was terminated, he is in a predicament that makes paying any costs to the defendant "inequitable and clearly a financial hardship."  Id. at 14.  While Prioleau has submitted documentary evidence in support of his Opposition

that relates to his current CCHRO claims, his termination from CSC and job applications and information concerning jobs at UTC, he has not submitted evidence concerning his financial situation.

There is no record before this court that would support the conclusion Prioleau seeks:  that it would be inequitable to award the pro-rata share of the deposition expenses and witness fee expense against him because he is incapable of paying these costs.  Even if Prioleau were proceeding in forma pauperis, which he is not, he could still be subject to an award of costs.  See 27 U.S.C. § 1915(f)(1) ("Judgment may be rendered for costs at the conclusion of [a proceeding in forma pauperis] as in other proceedings . . ."); see also Whitfield, 241 F.3d at 270 ("As a general matter a district court may deny costs on account of a losing party's indigency, but indigency per se does not automatically preclude an award of costs.").  He has marketable job skills and is employable.  Finally, the pendency of a claim before the CCHRO does not justify the avoidance of costs in his previous unsuccessful litigation.

## CONCLUSION

Therefore, the court awards costs in favor of Sikorsky and against Prioleau in the amount of **$1,878.76** (deposition expenses), and **$109.00** (marshal's fees) for a total of **$1,987.76**.

This Ruling is without prejudice to Sikorsky renewing its request for costs in connection with the deposition of Dr. Madden if the appropriate documentation is submitted.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 25th of May, 2006.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge